**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Adam Alcantar,<br><br>        Petitioner,<br><br>vs.<br><br>Charles L. Ryan, et al.,<br><br>        Respondents. | CIV 14-1221-PHX-NVW (MHB)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE NEIL V. WAKE, UNITED STATES DISTRICT JUDGE:

Petitioner Adam Alcantar, who is confined in the Arizona State Prison Complex-Eyman, has filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1). Respondents have filed an Answer (Doc. 11), and Petitioner has filed a Reply (Doc. 13).

## BACKGROUND[1]

In its April 30, 2010 Memorandum Decision, the Arizona Court of Appeals found the following facts:

> [Petitioner] victimized his niece, C., three times during 1989 or 1990, when she was between seven and eight years old. One incident occurred when she was playing hide-and-seek with [Petitioner] at his residence. When [Petitioner] found C. hiding in a bedroom, he put her on the bed and held her down as he rubbed his crotch against hers and tried to unzip his pants. After C. screamed, another child came out of hiding in a nearby closet, and [Petitioner] let C. go. Another incident occurred when [Petitioner] was playing with C. and other children in the living room, picking them up by their legs and arms, and spinning them in circles to get them dizzy. When it was C.'s turn, [Petitioner]

---

[1] Unless otherwise noted, the following facts are derived from the exhibits submitted with Doc. 11 – Respondents' Answer.

put two fingers inside her underwear and placed one finger inside her vagina. He dropped her onto a nearby couch when she started kicking him. The third incident took place at a family birthday party. There, [Petitioner] tried to put his fingers under C.'s swimming suit and touched her vaginal area while giving her a piggyback ride in a swimming pool.

[Petitioner]'s daughter, A., and her cousin, D., were both in kindergarten when [Petitioner] began abusing them in 1990 or 1991. When A. and D. were playing at home one day jumping on a bed, [Petitioner] told them to show him their "private areas," which they did. They also followed [Petitioner]'s instructions to touch themselves and each other. [Petitioner] then led A. out of the bedroom so he could be alone with D. After telling D. to partially undress, [Petitioner] performed oral sex on her, took off his pants, stroked his penis, and tried to penetrate her vagina with it. He stopped when he saw his wife and other family members coming home, and he immediately put D. in a closet and told her to get dressed.

When [Petitioner] and his wife separated, A. lived with [Petitioner] at his parents' house. Just before her eighth or ninth birthday, [Petitioner] came into the bedroom where A. was lying down. He lay down next to her, held down her arms, and began masturbating, touching her leg with his penis. [Petitioner] then repositioned A. onto her back, removed her underwear, held her arms down again, and forced her legs open. He tried inserting his penis into her vagina and slightly penetrated her several times, repeatedly instructing her, "Tell me you like it." [Petitioner] then tried to have anal sex with her, saying several times, "I'm almost there." After performing oral sex on A. and trying to enter her vagina from behind, [Petitioner] said he was "almost done," and he ejaculated onto A.'s back.

[Petitioner] abused A. again a "couple [of] months" later when she was living with him at his girlfriend's house. One day when A. was showering, [Petitioner] came into the bathroom naked and got into the shower with her. He put soap on his penis and put his penis in her vagina several times, telling her he was "cleaning [her] out." When [Petitioner]'s girlfriend came home, he told A. to "[g]et the hell out" of the shower, and A. ran out of the bathroom, crying.

(Exh. F at ¶¶ 3-7.)

A grand jury charged Petitioner with indecent exposure, two counts of child molestation, three counts of attempted sexual conduct with a minor, and four counts of sexual abuse of a minor. (Exh. A.) The State alleged that all the charges, except indecent exposure, were dangerous crimes against children, and that Petitioner had three prior convictions. (Exhs. A, B.) A jury convicted him as charged, and the trial court imposed a combination of consecutive and concurrent sentences totaling 144 years. (Exhs. C, F at ¶ 1.)

In his opening brief on direct appeal, Petitioner argued that pre-indictment delay violated his federal right to due process. (Exh. E at ¶¶ 39-55.) He also argued that the trial

court erred in denying his motion to preclude the State's expert from testifying about common characteristics of victims of childhood sex crimes, and in permitting a witness to testify about Petitioner's attempt to commit a sex crime against her. (Id. at ¶¶ 56-65, ¶¶ 66-75.) The Arizona Court of Appeals affirmed Petitioner's convictions and sentences. (Exh. F.)

Petitioner filed a *pro se* petition for review in the Arizona Supreme Court, reasserting counsel's claims from his direct appeal. (Exh. G at 2-10.) Within these arguments, Petitioner included additional claims of ineffective assistance of appellate and trial counsel, judicial bias, and prosecutorial misconduct. (Id. at 5, 6, 8.) He also argued that the trial court erred in failing to stop the State from prosecuting a multiplicitous indictment, dismissing one of the charges, upholding prior evidentiary rulings, imposing appropriate disclosure sanctions, and preventing prosecutorial misconduct. (Id. at 10-12.) The Arizona Supreme Court denied review without comment. (Exh. H.)

Petitioner filed a timely PCR notice, and the trial court appointed appellate counsel to represent him. (Exhs. J, K.) The trial court granted appellate counsel's motion to appoint new counsel for Petitioner. (Exhs. L, M.) Appointed counsel notified the court that he had interviewed Petitioner twice, reviewed suggestions from him, and interviewed trial counsel. (Exh. N.) Counsel also stated that after his review of "the Superior Court file, correspondence from [Petitioner], six volumes of trial transcripts, appellate briefs, and the appellate decision," he "determined there are no colorable claims which he can raise on [Petitioner's] behalf." (Id.) The trial court granted counsel's request to allow Petitioner additional time in which to file a *pro se* Rule 32 petition. (Exhs. N, O.) More than 2 weeks after the deadline, the trial court dismissed Petitioner's PCR notice based on his failure to file a timely petition. (Exh. P.)

The trial court granted Petitioner's subsequent motion to set aside the dismissal, and allowed him additional time in which to file a *pro se* PCR petition. (Exhs. Q, R.) Although Petitioner's Rule 32 petition was not filed until a month past that deadline, the trial court accepted it. (Exhs. S, T.) Petitioner argued that his sentences did not comport with Arizona

1 sentencing statutes in numerous respects and alleged instances of "flagrant, pervasive and
2 escalating prosecutorial misconduct." (Exh. S, attachment A at 3-13.) He also asserted
3 ineffective assistance of counsel claims that trial, appellate, and Rule 32 counsel were
4 ineffective in failing to properly respond to and/or raise the alleged sentencing errors and
5 instances of prosecutorial misconduct. (Id. at 1-3.)

6 The trial court found Petitioner's sentencing claims precluded, increased his
7 presentence incarceration credit, and concluded counsel had not been ineffective in failing
8 to raise the sentencing challenges. (Exh. U at 2.) Similarly, the court found prosecutorial
9 misconduct claims precluded and "unsupported by the record." (Id.) Petitioner's motion for
10 reconsideration was denied. (Exh. V.)

11 In his petition for review to the Arizona Court of Appeals, Petitioner reasserted some
12 of the claims raised in his PCR petition. (Exh. W.) The appellate court granted the petition
13 for review, but adopted the trial court's ruling, and denied relief. (Exh. X.) Petitioner did not
14 seek further review. (Exh. Y.)

15 In the instant habeas petition, Petitioner raises four grounds for relief. In his first
16 ground, Petitioner argues that the trial court violated his constitutional rights by failing to
17 grant his motion to dismiss based on pre-indictment delay. In his second ground, Petitioner
18 alleges that improper and prejudicial expert testimony was presented at his trial, violating his
19 Fifth, Sixth, Eighth, and Fourteenth Amendment rights. In his third ground, Petitioner alleges
20 that other acts for which Petitioner had previously been convicted were improperly presented
21 to the jury. In his fourth ground, Petitioner alleges that his attorney provided constitutionally
22 defective assistance.

23 **DISCUSSION**

24 In their Answer, Respondents contend that Grounds Two and Three fail to state a
25 basis for federal habeas relief; and Grounds One and Four fail on the merits. As such,
26 Respondents request that the Court deny and dismiss Petitioner's habeas petition with
27 prejudice.
28 \\\

### A.     Non-Cognizable Claims

In Ground Two, Petitioner contends that "his convictions and sentences were secured through the use of improper, prejudicial expert testimony" in violation of the Federal Rules of Evidence and the Fifth, Sixth, Eighth, and Fourteenth Amendments. In Ground Three, Petitioner argues that "the jury was improperly and prejudicially influenced by immaterial, irrelevant, inadmissible testimony of [a previous victim of Petitioner] regarding other sexual acts which were prosecuted by the State."

The Court can grant habeas relief "only on the ground that [a petitioner] is in custody in violation of the Constitution or laws or treatises of the United States." 28 U.S.C. § 2254(a). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law grounds." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); see Gilmore v. Taylor, 508 U.S. 333, 348-49 (1993) ("[M]ere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas."); Lewis v. Jeffers, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."). And, a petitioner may not "transform a state law issue into a federal one merely by asserting a violation of due process." Poland v. Stewart, 169 F.3d 573, 584 (9th Cir. 1999) (quoting Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996)); see Engle v. Isaac, 456 U.S. 107, 119-21 (1982) ("While they attempt to cast their first claim in constitutional terms, we believe that this claim does no more than suggest that the instructions at respondents' trials may have violated state law.").

Petitioner does not present cognizable federal claims in Grounds Two or Three. Although Petitioner attempts to "transform a state law issue into a federal one," as he argued in his opening brief to the Arizona Court of Appeals, Petitioner is challenging the admissibility of evidence under state evidentiary rules, arguing that the State's expert testimony was not admissible under Rule 702, Arizona Rules of Evidence, and that the previous victim's testimony was not admissible under Rule 404(c), Arizona Rules of Evidence. (Exh. E at ¶¶ 62-65, 67-75.)

Accordingly, the Court will recommend that Grounds Two and Three be denied and dismissed as said claims are non-cognizable for purposes of federal habeas review.

**B.     Merits**

Pursuant to the AEDPA[2], a federal court "shall not" grant habeas relief with respect to "any claim that was adjudicated on the merits in State court proceedings" unless the state court decision was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court; or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring and delivering the opinion of the Court as to the AEDPA standard of review). "When applying these standards, the federal court should review the 'last reasoned decision' by a state court ... ." Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

A state court's decision is "contrary to" clearly established precedent if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." Williams, 529 U.S. at 404-05. "A state court's decision can involve an 'unreasonable application' of Federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002).

**1.     Ground One**

In Ground One, Petitioner asserts that the trial court violated his due process rights by denying his motion to dismiss based on pre-indictment delay.

---

[2] Antiterrorism and Effective Death Penalty Act of 1996.

- 6 -

1  Although statutes of limitations are the primary protection against overly stale
2  criminal charges, the "Due Process Clause has a limited role to play in protecting against
3  oppressive delay." United States v. Lovasco, 431 U.S. 783, 789 (1977). The Supreme Court
4  has held that a due process violation is established when the delay of the indictment violates
5  those "fundamental conceptions of justice which lie at the base of our civil and political
6  institutions, and which define the community's sense of fair play and decency." Id. at 790
7  (internal citations and quotation marks omitted).

Establishing a denial of due process through pre-indictment delay requires: (1) proof of actual, non-speculative prejudice from the delay; and (2) a showing that the delay, when balanced against the reason for the delay, offends those "'fundamental conceptions of justice which lie at the base of our civil and political institutions.'" United States v. Sherlock, 962 F.2d 1349, 1353-54 (9th Cir. 1992) (quoting Lovasco, 431 U.S. at 790). Generally, "to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." Lovasco, 431 U.S. at 796. However, delay for tactical reasons, to harass the defendant, or in reckless disregard of facts indicating that a defendant's ability to defend himself is at a discernable risk implicates due process. See id. at 795 (no due-process violation after 18-month investigative delay and some prejudice); United States v. Marion, 404 U.S. 307, 324-25 (1971) (no due process violation after 38-month delay, without culpable intent, and no actual prejudice); see also United States v. Gouveia, 467 U.S. 180, 192 (1984) (defendant must prove that delay "was a deliberate device to gain an advantage over him," in addition to actual prejudice).

The proof of prejudice must be definite and not merely speculative. See United States v. Talbot, 51 F.3d 183, 185 (9th Cir. 1995); United States v. Butz, 982 F.2d 1378, 1380 (9th Cir. 1993). If a defendant fails to demonstrate actual prejudice, the inquiry ends. See United States v. Manning, 56 F.3d 1188, 1194 (9th Cir. 1995).

The Court finds that the appellate court's decision was not contrary to nor an unreasonable application of federal law. In denying this claim on direct appeal, the Arizona

- 7 -

Court of Appeals found that Petitioner had failed to establish either that the state had charged him when it did in order to gain a tactical advantage or to harass him, or any resulting prejudice. (Exh. F at ¶¶ 8-13.) Specifically, the appellate court found:

> [Petitioner] committed these sexual offenses between 1989 and 1994. They came to light in March 2002, when then-seventeen-year-old A. revealed to her mother that [Petitioner] had raped her when she had lived in Arizona. After learning [Petitioner] had also abused A.'s cousins, C. and D., A.'s mother drove from her home in Texas to report the offenses to authorities in Arizona that same month.
>
> In the ensuing investigation, which took place over several years, detectives with the Casa Grande Police Department recorded interviews and collected other tangible evidence against [Petitioner]. The trial court summarized the subsequent developments as follows:
>
>> [I]n 2005, believing the prosecutor's office had "declined" charging, the second assigned investigator authorized destruction of certain items that had been gathered in the investigation; these items included cassette recordings of interviews with victims and potential witnesses, letters between one victim and the Defendant and certain photographs; copies of the letters and photographs were made and retained with the police reports and have been made available to the Defendant; summaries of the recorded conversations are available in and contained within the investigator's reports; . . . the destruction of the evidence, while inadvertent and negligent, was not the result of "bad faith" behavior by law enforcement.
>
> [Petitioner] has not provided a transcript of the evidentiary hearing held on his motion to dismiss. We therefore presume the missing portions of the record support the trial court's findings. *See State v. Geeslin*, 223 Ariz. 553, ¶ 5, 225 P.3d 1129, 1130 (2010).
>
> Ultimately, the trial court found the four-year period from the initial report to law enforcement officials until the indictment was the result of personnel changes, locating and interviewing potential witnesses and victims, and "follow up investigation" conducted into "late 2006." The court found "the delay [wa]s not the result of intentional or 'bad faith' behavior on the part of law enforcement or prosecution." Because the record supports the court's finding that state officials did not delay prosecution to gain a tactical advantage or to harass [Petitioner], the court did not abuse its discretion in denying the motion to dismiss. And, having failed to establish the first step in the two-step test, [Petitioner] has not demonstrated that he is entitled to relief on appeal. *See* [*State v.*] *Lacy*, 187 Ariz. [340,] 346, 929 P.2d [1288,] 1294 [(1996] (claim based on pre-indictment delay fails "[a]bsent proof of an intentional delay for strategic or harassment purposes").
>
> In his appellate briefs, [Petitioner] emphasizes the prejudicial impact of the pre-indictment delay, particularly the destruction of the audio recordings. Yet prejudice caused by pre-indictment delay is a necessary but insufficient ground for dismissal. *Lovasco*, 431 U.S. at 790. [Petitioner] suggests that, because he suffered prejudice from the destruction of the evidence, state officials must have destroyed it for that reason. But the trial court, having observed the

> witnesses below and having served as the trier of fact in this matter, was in the best position to assess the officials' motives and credibility, and we consequently defer to the court's findings. *See State v. Olquin*, 216 Ariz. 250, ¶ 10, 165 P.3d 228, 230 (App. 2007).

(Exh. F at ¶¶ 9-12.) The appellate court also noted that the trial court eliminated any possibility of prejudice by granting Petitioner's request that the jury be instructed pursuant to State v. Willits, 96 Ariz. 184, 393 P.2d 274 (1964). (Id. at ¶ 13.) The trial court instructed the jurors that, if they found the State had "lost, destroyed, or failed to preserve evidence whose contents or quality [were] important to the issues in this case," they should weigh the State's explanation for the unavailability of the evidence; if they found the explanation inadequate, they could infer the evidence was against the State's interest and may have created a reasonable doubt about Petitioner's guilt. (Exh. F at ¶ 13.)

Because the court of appeals' determination that Petitioner had failed to establish either bad faith or resulting prejudice are amply supported in the record, and because the court's ultimate conclusion that no constitutional due-process violation had occurred was neither contrary to nor an unreasonable application of federal law, Petitioner is not entitled to habeas relief on this ground. See 28 U.S.C. § 2254(d)(1); Gouveia, 467 U.S. at 192 (defendant must prove that delay "was a deliberate device to gain an advantage over him"); Marion, 404 U.S. at 323 ("potential prejudice" is insufficient).

### 2. **Ground Four**

In Ground Four, Petitioner asserts that trial and appellate counsel were ineffective in failing to address five specific sentencing issues. Petitioner also asserts that trial and appellate counsel were ineffective in failing to address five instances of prosecutorial misconduct.

\\\
\\\
\\\
\\\
\\\

- 9 -

1    The two-prong test for establishing ineffective assistance of counsel was established
2 by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). In order to prevail
3 on an ineffective assistance claim, a convicted defendant must show (1) that counsel's
4 representation fell below an objective standard of reasonableness, and (2) that there is a
5 reasonable probability that, but for counsel's unprofessional errors, the result of the
6 proceeding would have been different. See id. at 687-88.

7    Regarding the performance prong, a reviewing court engages a strong presumption
8 that counsel rendered adequate assistance, and exercised reasonable professional judgment
9 in making decisions. See id. at 690. "[A] fair assessment of attorney performance requires
10 that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the
11 circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's
12 perspective at the time." Bonin v. Calderon, 59 F.3d 815, 833 (9th Cir. 1995) (quoting
13 Strickland, 466 U.S. at 689). Moreover, review of counsel's performance under Strickland
14 is "extremely limited": "The test has nothing to do with what the best lawyers would have
15 done. Nor is the test even what most good lawyers would have done. We ask only whether
16 some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel
17 acted at trial." Coleman v. Calderon, 150 F.3d 1105, 1113 (9th Cir.), judgment rev'd on other
18 grounds, 525 U.S. 141 (1998). Thus, a court "must judge the reasonableness of counsel's
19 challenged conduct on the facts of the particular case, viewed as of the time of counsel's
20 conduct." Strickland, 466 U.S. at 690.

21    If the prisoner is able to satisfy the performance prong, he must also establish
22 prejudice. See id. at 691-92; see also Smith v. Robbins, 528 U.S. 259, 285 (2000) (burden
23 is on defendant to show prejudice). To establish prejudice, a prisoner must demonstrate a
24 "reasonable probability that, but for counsel's unprofessional errors, the result of the
25 proceeding would have been different." Strickland, 466 U.S. at 694. A "reasonable
26 probability" is "a probability sufficient to undermine confidence in the outcome." Id. A court
27 need not determine whether counsel's performance was deficient before examining whether
28 prejudice resulted from the alleged deficiencies. See Robbins, 528 U.S. at 286 n.14. "If it is

1 easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice,
2 which we expect will often be so, that course should be followed." <u>Id.</u> (quoting <u>Strickland</u>,
3 466 U.S. at 697).

4     In reviewing a state court's resolution of an ineffective assistance of counsel claim,
5 the Court considers whether the state court applied <u>Strickland</u> unreasonably:

> For [a petitioner] to succeed [on an ineffective assistance of counsel claim], ... he must do more than show that he would have satisfied <u>Strickland</u>'s test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied <u>Strickland</u> incorrectly. Rather, he must show that the [state court] applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner.

10 <u>Bell v. Cone</u>, 535 U.S. 685, 698-99 (2002) (citations omitted); <u>see</u> <u>also</u> <u>Woodford v.</u>
11 <u>Visciotti</u>, 537 U.S. 19, 24-25 (2002) ("Under § 2254(d)'s 'unreasonable application' clause,
12 a federal habeas court may not issue the writ simply because that court concludes in its
13 independent judgment that the state-court decision applied <u>Strickland</u> incorrectly. Rather, it
14 is the habeas applicant's burden to show that the state court applied <u>Strickland</u> to the facts
15 of his case in an objectively unreasonable manner.") (citations omitted).

16     Regarding the sentencing issues, other than granting Petitioner additional presentence
17 incarceration credit, the trial court found that the remainder of Petitioner's sentencing
18 challenges were "without merit," and therefore found that counsel was not ineffective for
19 failing to assert them. (Exh. U at 2.) Then, in review of these claims, the Arizona Court of
20 Appeals stated that "because the [trial court's] ruling is correct with respect to the claims the
21 court expressly identified and resolved, and [Petitioner] has not persuaded us otherwise, we
22 adopt that ruling." (Exh. X at ¶ 3.)

23     Petitioner does not explain how the state courts violated <u>Strickland</u> or applied
24 <u>Strickland</u> to the facts of his case in an objectively unreasonable manner. Thus, the Court
25 finds that the state court's decision was not contrary to clearly established federal law.

26     As to the prosecutorial misconduct issues, the court of appeals, in its ruling denying
27 relief on Petitioner's petition for review, stated that Petitioner "seems to argue the [trial]
28 court did not address his claim of prosecutorial misconduct in connection with his claim of

1 [ineffective assistance of counsel]." (Exh. X at ¶ 4.) The appellate court found that Petitioner
2 had not been prejudiced because, as the trial court had found, the record did not support any
3 claim of prosecutorial misconduct. (Id. at ¶ 4.)

4 Again, Petitioner has failed to meet his burden of explaining how these rulings
5 violated Strickland or applied Strickland to the facts of his case in an objectively
6 unreasonable manner. As such, the Court finds that the state court's decision was not
7 contrary to clearly established federal law.

## CONCLUSION

9 Having determined that Grounds Two and Three fail to state a basis for federal habeas
10 relief; and Grounds One and Four fail on the merits, the Court will recommend that
11 Petitioner's Petition for Writ of Habeas Corpus be denied and dismissed with prejudice.

12 **IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of
13 Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED WITH**
14 **PREJUDICE**.

15 **IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave
16 to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a
17 substantial showing of the denial of a constitutional right and because the dismissal of the
18 Petition is justified by a plain procedural bar and jurists of reason would not find the
19 procedural ruling debatable.

20 This recommendation is not an order that is immediately appealable to the Ninth
21 Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of
22 Appellate Procedure, should not be filed until entry of the district court's judgment. The
23 parties shall have fourteen days from the date of service of a copy of this recommendation
24 within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1);
25 Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen
26 days within which to file a response to the objections. Failure timely to file objections to the
27 Magistrate Judge's Report and Recommendation may result in the acceptance of the Report
28 and Recommendation by the district court without further review. See United States v.

1 Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any
2 factual determinations of the Magistrate Judge will be considered a waiver of a party's right
3 to appellate review of the findings of fact in an order or judgment entered pursuant to the
4 Magistrate Judge's recommendation. See Rule 72, Federal Rules of Civil Procedure.

5     DATED this 30th day of April, 2015.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge